**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | **CASE NO. 15-36563** |
| | § | |
| **NOVA DIRECTIONAL, INC.,** | § | **Chapter 11** |
| | § | |
| Debtor. | § | |

**CHAPTER 11 PLAN OF REORGANIZATION OF NOVA DIRECTIONAL, INC.**
**(Dated: November 4, 2016)**

Nova Directional, Inc. (the "**Debtor**") proposes the following Chapter 11 Plan of Reorganization of Nova Directional, Inc. (the "**Plan**") pursuant to title 11 of chapter 11 of the United States Code (the "**Bankruptcy Code**").

**SUMMARY OVERVIEW**

The Debtor is an oil-field service oriented company whose founders have over thirty years of experience in directional and horizontal drilling. The Debtor is a privately owned and operated company that understands the domestic drilling market and strives to deliver the best customer service by providing experienced personnel and supervision and a wide range of tools to best suit the specific drilling environment.

The specific services the Debtor provides to its customers include: a) engineering and wellbore design; b) directional drilling services; c) directional drilling supervision services; d) performance drilling motors; e) logging while drilling (LWD) and measurement while drilling (MWD) services; and f) consulting services related to engineering, production and completion of wells.

The precipitous decline of oil and gas prices over the past year has had a significant negative impact on the Debtor's drilling business. Indeed, the Debtor's revenues dropped over fifty percent in 2015 (compared to 2014) and EBITDA has fallen off steeply as a result. In response, the Debtor has undertaken aggressive measures to combat the significant drop in its revenues, including laying off a significant number of employees, cutting management numbers and salaries and also cutting general administrative costs significantly.

Unfortunately, due to the significant drop in drilling opportunities, the consequent significantly reduced revenues, and the Debtor's debt load, the Debtor's management was concerned that the value of the Debtor's assets were less than the outstanding liabilities and management became increasingly concerned about its ability to pay the current and potential claims. After exploration of all viable restructuring opportunities, including the sale of some or all of the Debtor's asset both inside and outside of the bankruptcy process, the Debtor's management concluded that it should undertake an orderly restructuring of its business in a Chapter 11 proceeding in order to try to maximize value for its creditors.

**CHAPTER 11 PLAN OF REORGANIZATION OF NOVA DIRECTIONAL, INC. – Page 1**

The Plan provides for a continuance of the Debtor as a going concern (the "**Reorganized Debtor**"), a restructuring of the Debtor's obligations, and a satisfaction of the claims of the Debtor's creditors as provided in the terms and timeframes as follows:

1. The Reorganized Debtor will continue to operate as a going concern after Confirmation. Salesmen have been added in Texas and Oklahoma, which the Debtor anticipates will generate 5 new customers and an average of 3 to 4 new jobs per month. In addition, the Debtor is anticipating a major upcoming project in the Bakken Formation which is scheduled to begin in November 2016. Shareholders currently employed in management positions will be given appropriate salaries in order to maintain the Reorganized Debtor's continued operations. The Debtor believes that the post-Confirmation operations of the Reorganized Debtor will generate enough cash to effectively fund the Plan.

2. The underlying documents supporting the Allowed Secured Claims of MSB will be modified as follows: (i) payments to MSB will be made at full value through December 2016; (ii) payments will be made at 60% to MSB from January 2017 through December 2017; (iii) full payments to MSB shall resume in full beginning in January 2018; (iv) the payments shall be paid on a monthly basis and shall be comprised of principal and interest; and (v) MSB will retain its Liens against the Collateral securing its Claims.

3. The underlying documents supporting the Allowed Secured Claims of SBA will be modified as follows: (i) payments to SBA will be made at full value through December 2016; (ii) payments will be made at 40% to SBA from January 2017 through December 2017; (iii) full payments to SBA shall resume in full beginning in January 2018; (iv) the payments shall be paid on a monthly basis and shall be comprised of principal and interest; and (v) SBA will retain its Liens against the Collateral securing its Claims.

4. All Allowed Secured Tax Claims will receive the following treatment: (i) interest will be paid from the Petition Date through the Effective Date at the rate of 1% per month; (ii) payments will be made in equal quarterly installments with post-Effective Date interest of 12% per annum, with the last installment to be paid no later than four years after the Petition Date. Holders of Secured Tax Claims shall retain their liens against their Collateral until full payment is made on the entirety of their obligations.

5. All Allowed Priority Tax Claims will be treated in accordance with 1129(a)(9)(c) of the Bankruptcy Code.

6. All Allowed General Unsecured Claims will either be paid, at the General Unsecured Claimant's option: (i) 35% of the Allowed Amount of their Claims within 10 days of the Effective Date; or (ii) in full over five years in 20 equal quarterly installments. The Reorganized Debtor will have the option to

immediately pay off Allowed General Unsecured Claims at any time should sufficient liquidity exist. No interest will be paid on General Unsecured Claims.

7. All Allowed Shareholder Unsecured Claims shall be granted promissory notes payable on a monthly basis at an interest rate set for in the notes. Holders of Allowed Shareholder Unsecured Claims will not be paid any cash or interest prior to satisfaction in full of all Allowed General Unsecured Claims, and shall only receive payment on such Allowed Shareholder Claims if full monthly payments to the Allowed Secured Claims have resumed.

8. Holders of Interests in the Debtor shall be given equivalent interest allocations in the Reorganized Debtor, subject to the satisfaction of all obligations to pay all Allowed Claims as set forth in the Disclosure Statement and the Plan. Holders of Interests in the Reorganized Debtor shall receive no dividends or tax remittances until all Allowed Claims are paid in full.

# ARTICLE I

# DEFINITIONS

Unless the context otherwise requires, the following terms shall have the following meanings when used in initially capitalized form in this Plan. Such meanings shall be equally applicable to both the singular and plural forms of such terms. Any term used in initially capitalized form in this Plan that is not defined herein, but that is defined in the Bankruptcy Code, shall have the meaning assigned to such term in the Bankruptcy Code.

1.1 **Administrative Claim** means a Claim for payment of an administrative expense under sections 503(b) or 1114(e)(2) of the Bankruptcy Code and entitled to priority under section 507(a)(1) of the Bankruptcy Code, including (a) actual, necessary costs and expenses, incurred after the Petition Date, of preserving the Debtor's Estate and operating their business, including wages, salaries, or commissions for services rendered after the Petition Date, (b) Fee Claims, (c) all fees and charges assessed against the Estate under 28 U.S.C. §1930 and (d) all Allowed Claims entitled to be treated as Administrative Claims by virtue of a Final Order entered under section 546(c)(2)(A) of the Bankruptcy Code.

1.2 **Allowed Amount** means the amount in lawful currency of the United States of any Allowed Claim, or the percentage of partnership interest representing any Allowed Interest.

1.3 **Allowed Claim and Allowed Interest** means, with reference to any Claim or Interest: (i) a Claim against or Interest in the Debtor, proof of which, if required, was Filed on or before the Bar Date, which is not a Contested Claim or Contested Interest; (ii) if no proof of claim or interest was so Filed, a Claim against or Interest in the Debtor that has been or hereafter is listed by the Debtor in its Schedules as liquidated in amount and not disputed or contingent; or (iii) a Claim or Interest allowed hereunder or by Final Order. An Allowed Claim or Allowed Interest does not include any Claim or Interest or portion thereof which is a Disallowed Claim or Disallowed Interest or which has been subsequently withdrawn, disallowed, released or waived by the holder thereof, by this Plan, or pursuant to a Final Order. Unless otherwise specifically provided in this Plan, an Allowed Claim or Allowed Interest shall not include any amount for punitive damages or penalties.

**1.4** **Avoidance Actions** means any claim or cause of action belonging to the Debtors or Reorganized Debtors and arising under the Bankruptcy Code, including but not limited to sections 544, 547, 548 and 550.

**1.5** **Bankruptcy Court** means the United States Bankruptcy Court for the Southern District of Texas, Houston Division.

**1.6** **Bar Date** means the deadline by which a Claim must have been timely Filed, and has been set at April 13, 2016.

**1.7** **Business Day** means any day other than a Saturday, Sunday, or legal holiday (as that term is defined in Bankruptcy Rule 9006(a)).

**1.8** **Chiaramonte** means Edward Chiaramonte, an equity holder in the Debtor.

**1.9** **Claim** means right of payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured.

**1.10** **Claimant** means a holder of a Claim.

**1.11** **Class** means all of the holders of Claims against or Interests in the Debtor that have been designated as a class in Article III hereof.

**1.12** **Collateral** means any property or interest in property of the Debtor's Estate that is subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance under the Bankruptcy Code.

**1.13** **Confirmation** means the Bankruptcy Court's confirmation of the Plan.

**1.14** **Confirmation Date** means the date of entry by the Court of an order confirming the Plan.

**1.15** **Confirmation Hearing** means the hearing to be held before the Bankruptcy Court in which the Plan Proponents shall seek Confirmation of this Plan.

**1.16** **Confirmation Order** means the Final Order confirming this Plan.

**1.17** **Consummation** shall mean the instant upon which the first distributions of cash or property has been made to any class of Creditors under this Plan, at which time this Plan shall be deemed fully consummated and on which date this Plan shall be fully effective.

**1.18** **Contested** when used with respect to a Claim or Interest, means a Claim against or Interest in the Debtor that is: (i) listed in one of the Debtor's Schedules as disputed, contingent, or unliquidated and as to which a proof of claim has been timely Filed; (ii) listed in one of the Debtor's Schedules as undisputed, liquidated, and not contingent and as to which a proof of Claim or Interest has been Filed with the Bankruptcy Court, to the extent the proof of Claim or Interest amount exceeds the amount provided for in one of the Debtor's Schedules; or (iii) the subject of an objection which has been or may be timely Filed and which claim has not been allowed or disallowed by Final Order. Further, except as otherwise provided in this Plan, a Contested Claim shall also include any Claim as to which the holder has retained property of the Estate. To the extent an objection relates to the allowance of only a part of a Claim or Interest, such a Claim or

**CHAPTER 11 PLAN OF REORGANIZATION OF NOVA DIRECTIONAL, INC. – Page 4**

Interest shall be a Contested Claim or Contested Interest only to the extent of the objection.

1.19    **Creditor** means the holder of a Claim as of the Petition Date.

1.20    **Debtor's Assets** means all assets of any kind or description comprising the Debtor's Estate.

1.21    **Disallowed Claim or Disallowed Interest** means a Claim against or Interest in the Debtor, or any portion thereof: (i) that has been disallowed by Final Order; (ii) for which a proof of claim has been untimely Filed and as to which no Order of allowance has been entered by the Bankruptcy Court; or (iii) listed as disputed, contingent, or unliquidated and as to which no proof of claim or proof of interest has been timely Filed.

1.22    **Disclosure Statement** means the written disclosure statement approved by the Bankruptcy Court that the Debtor has distributed to solicit acceptances of the Plan.

1.23    **Effective Date** means the date on which the Debtor takes the steps necessary to effectuate the Plan, which date is not later than 14 days after the date of entry of the Confirmation Order.  Notice of the occurrence of the Effective Date shall be filed herein by the Reorganized Debtor.

1.24    **Entity** includes any individual, partnership, corporation, estate, trust, governmental unit, person, and the United States Trustee.

1.25    **Estate** means the estate of the Debtor, being all non-exempt assets of the Debtor, as created under section 541 of the Bankruptcy Code upon the commencement of the chapter 11 Cases.

1.26    **Fee Claim** means a Claim for fees and expense reimbursements under sections 330 or 503(b) of the Bankruptcy Code.

1.27    **Filed** means filed with the Bankruptcy Court.

1.28    **Final Order** means an order or judgment, entered by the Bankruptcy Court or other court of competent jurisdiction, that has not been amended, modified or reversed and as to which: (i) no stay is in effect; (ii) the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing, shall then be pending; or (iii) in the event that an appeal, writ of certiorari, reargument or rehearing thereof has been sought, such order shall have been affirmed by the highest court to which such order may be appealed, or certiorari has been denied, and the time to take any further appeal, petition for certiorari or move for re-argument or rehearing shall have expired.

1.29    **FLSA Contested Matter** means that certain *Objection to Claim Filed by Shannon Shorter and Matthew Taylor*, filed by the Debtor in this Chapter 11 Case [Docket No. 96] on October 3, 2016.

1.30    **General Unsecured Claims** means an Unsecured Claim that: (i) is not entitled to priority under section 507 of the Bankruptcy Code; (ii) does not constitute a Shareholder Unsecured Claim.

1.31    **Governmental Bar Date** means the deadline by which a Claim must have been

timely Filed by a Governmental Entity, and has been set at June 14, 2016

    **1.32**    **Governmental Unit** shall have the meaning accorded it in section 101(27) of the Bankruptcy Code.

    **1.33**    **Harper** means Joe Harper, an equity holder in the Debtor.

    **1.34**    **Impaired** means the treatment of an Allowed Claim or Allowed Interest under this Plan unless, with respect to such Claim or Interest, either: (i) this Plan leaves unaltered the legal, equitable, and contractual rights to which such Claim or Interest entitles the holder of such Claim or Interest; or (ii) notwithstanding any contractual provision or applicable law that entitles the holder of such Claim or Interest to demand or receive accelerated payment of such Claim or Interest after occurrence of a default by the Debtor (A) cures any default that occurred before, on or after the commencement of the Chapter 11 case other than default of the kind specified in section 365(b)(2) of the Bankruptcy Code; (B) reinstates the maturity of such Claim or Interest as such maturity existed before such default; (C) compensates the holder of such Claim or Interest for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; and (D) does not otherwise alter the legal, equitable or contractual rights to which such Claim or Interest entitles the holder of such Claim or Interest.

    **1.35**    **Interest** means an equity ownership interest in the Debtor.

    **1.36**    **Krajnik** means Mike Krajnik, an equity holder in the Debtor.

    **1.37**    **Lien** means all valid and enforceable liens, security interests, claims and encumbrances against any property of the Debtor's Estate which are permitted by, or not avoided pursuant to, the Bankruptcy Code.

    **1.38**    **New Tech Contested Matter** means that certain *Objection to Claim Filed by New Tech Global Ventures, LLC*, filed by the Debtor in this Chapter 11 Case [Docket No. 95] on October 3, 2016.

    **1.39**    **MSB** means MidSouth Bank, N.A.

    **1.40**    **MSB Loan Documents** means: (i) that certain promissory note in the original principal amount of $1,835,981.00 and dated February 9, 2012; (ii) that certain promissory note in the original amount of $381,950.00 and dated August 6, 2012; (iii) that certain promissory note in the original amount of $184,577.00 and dated May 23, 2014; (iv) that certain promissory note in the original amount of $806,917.00 and dated December 16, 2014; (v) that certain promissory note in the original amount of $56,000.00 and dated June 5, 2015; (vi) that certain Commercial Security Agreement, dated February 2, 2012; (vii) that certain Commercial Security Agreement, dated August 6, 2012; (viii) that certain Commercial Security Agreement, dated May 23, 2014; (ix) that certain Commercial Security Agreement, dated December 16, 2014; (x) that certain Commercial Security Agreement, dated June 5, 2015; (xi) those certain UCC-1 financing statements filed with the Delaware Department of State, numbered 2012-0936619, 2012-0936692, 2013-2221688, 2015- 2556495, and 2015-2640141; and (xii) those certain UCC-1 financing statements filed with the Secretary of State of Texas, numbered 12-006008057, 12-006008178, 12-0026138801, and 15-0019956298.

    **1.41**    **Order** means an order or judgment of the Bankruptcy Court.

    **1.42**    **Person** means an individual, corporation, partnership, joint venture, association,

joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization or other entity.

**1.43** **Petition Date** means December 16, 2015.

**1.44** **Plan Documents** means this Plan, the Disclosure Statement, and any and all other documents necessary to effectuate this Plan, and all exhibits and attachments to any of the foregoing.

**1.45** **Priority Claim** means all Claims entitled to priority under sections 507(a)(2)-(a)(7) and (a)(9) of the Bankruptcy Code.

**1.46** **Priority Tax Claim** means any claim of a Governmental Unit of the kind specified in section 507(8)(a) of the Bankruptcy Code.

**1.47** **Puente** means Andres Puente, an equity holder of the Debtor.

**1.48** **Rangel** means Rafael Rangel, an equity holder in the Debtor.

**1.49** **Reorganized Debtor** means the Debtor as reorganized pursuant to and under the Plan.

**1.50** **SBA** means United States Small Business Administration.

**1.51** **SBA Loan Documents** means: (i) that certain Promissory Note, dated July 30, 2012 and in the principal amount of $1,323,000.00; (ii) that certain Promissory Note, dated April 2, 2015 and in the principal amount of $667,000.00; (iii) that certain Security Agreement, dated April 2, 2015; (iv) that certain financing statement filed with the Secretary of State of Texas, numbered 12-0024874139; and (v) that certain financing statement filed with the Delaware Department of State, numbered 2015-1944940.

**1.52** **Schedules** means those schedules and statements of financial affairs filed by the Debtor under Federal Rule of Bankruptcy Procedure 1007, as same may be amended from time to time.

**1.53** **Secured Tax Claim** means any Secured Claim that, absent its secured status, would be entitled to right of payment under 507(a)(8) of the Bankruptcy Code (determined irrespective of time limitations), including any related Secured Claim for penalties.

**1.54** **Secured Claim** means an Allowed Claim that is secured by a lien on or security interest in property in which the Debtor's Estate has an interest, or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of a Claimant's interest in a Debtor's Estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be.

**1.55** **Shareholder Unsecured Claim** means an Unsecured Claim against the Debtor that is held by a holder of an Interest in the Debtor.

**1.56** **Shorter Litigation** means that certain piece of litigation between Shannon Shorter and other ostensibly similarly situated plaintiffs, styled *Shannon Shorter, Individually and on Behalf of Others Similarly Situated v. Nova Directional, Inc.* (Case No. 15-00936, S.D.T.X. 2015).

**1.57** **Taxes** means and includes all federal, state, county and local income, ad valorem, excise, stamp and other taxes of any type or nature whatsoever.

**1.58** **Tax Claims** means any and all Secured or Priority Claims of any Entity for the payment of any Taxes: (i) accorded a priority pursuant to section 507(a)(8) of the Code; or (ii) secured by valid Liens on assets of the Debtor existing on the Confirmation Date. Additionally, all Liens securing Tax Claims shall be deemed and legally treated as released, voided and discharged upon payment of such Claims in full.

**1.59** **Unsecured Creditor** means the holder of a Claim that is not secured by a Lien and includes General Unsecured Claims, Shareholder Unsecured Claims, Administrative Claims, Priority Claims, or Priority Tax Claims.

## ARTICLE II

## TREATMENT OF NON-CLASSIFIED CLAIMS

**2.1** **Administrative Claims:**

    **(a)** **In General.** Each holder of an Administrative Claim except as otherwise set forth in this Article 2 (and specifically excluding Priority Tax Claims as set forth in Section 2.2 below) shall receive either: (i) with respect to Administrative Claims which are Allowed Claims on the Effective Date, the amount of such holder's Allowed Claim in one cash payment, within 10 days after the Effective Date, from the Reorganized Debtor; (ii) with respect to Administrative Claims which become Allowed Claims after the Effective Date, the amount of such holder's Allowed Claim, in one cash payment from the Reorganized Debtor within 10 days after such claim becomes an Allowed Administrative claim; or (iii) such other treatment agreed upon by the Debtor and such holder.

    **(b)** **Fee Claims.** Each professional person whose retention with respect to the Debtor's case has been approved by the Bankruptcy Court or who holds, or asserts, an Administrative Claim that is a Fee Claim shall be required to file with the Bankruptcy Court a final fee application within thirty (30) days after the Effective Date and to serve notice thereof on all parties entitled to such notice. The failure to file timely any such application as required under this Section 2.1(b) of this Plan shall result in the Fee Claim being forever barred and discharged. A Fee Claim, with respect to which a Fee Application has been properly Filed pursuant to this Section 2.1(b) of this Plan, shall become an Administrative Claim only to the extent allowed by Final Order. Fee Claims shall be paid either: (i) with respect to Fee Claims which are Allowed Claims on the Effective Date, the amount of such holder's Allowed Claim in one cash payment, within 10 days after the Effective Date, from the Debtor; (ii) with respect to Fee Claims which become Allowed Claims after the Effective Date, the amount of such holder's Allowed Claim, in one cash payment from the Reorganized Debtor within 10 days after such claim becomes an Allowed Fee Claim; or (iii) such other treatment agreed upon by the Debtor and such holder.

      **(c)**     **Administrative Claims Bar Date.** Any other person or Entity who claims to hold an Administrative Claim (other than a Fee Claim) shall be required to file with the Court an application within thirty (30) days after the Effective Date and to serve notice thereof on all parties entitled to such notice. The failure to file timely the application as required under this Section 2.1(c) of this Plan shall result in the Claim being forever barred and discharged. An Administrative Claim with respect to which an application has been properly Filed pursuant to this Section 2.1(c) of this Plan and to which no timely objection has been filed or an objection has been filed but overruled by the Court, shall become an Allowed Administrative Claim to the extent such claim is allowed by Final Order.

  **2.2**     **Administrative and Priority Tax Claims:**

      **(a)**     **Administrative Tax Claims.** Each holder of an Administrative Claim that is an Allowed Claim for Taxes for the Debtor is responsible for the period during which the Debtor's Chapter 11 Case is being administered, and any other Taxes of the Debtor payable pursuant to Section 507(a)(1) of the Bankruptcy Code, if any, shall be paid the Allowed Amount of such holder's Claim in cash, in full, within 10 days after the Effective Date.

      **(b)**     **Priority Tax Claims.** Each Allowed Priority Tax Claim shall be paid within 10 days after the Effective Date.

  **2.3**     **U.S. Trustee Fees.** All fees payable under 28 U.S.C. § 1930 shall be paid in cash in full within 10 days after the Effective Date or as they come due.

# ARTICLE III

## DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS

For purposes of repayment of the Debtor's indebtedness under the Plan, the Claims and Interests are divided into the following categories:

  **3.1**     **Class 1: Priority Claims.** This Class consists of Allowed Claims entitled to priority under section 507(a) of the Bankruptcy Code other than Priority Tax Claims.

  **3.2**     **Class 2: Secured Claim of MSB.** This Class consists of the Allowed Secured Claim of MSB against the Debtor and is secured by those assets demarcated within the MSB Loan Documents.

  **3.3**     **Class 3: Secured Claim of SBA.** This Class consists of the Allowed Secured Claim of SBA against the Debtor and is secured by those assets demarcated within the SBA Loan Documents.

  **3.4**     **Class 4: Secured Tax Claims.** This Class consists of the Allowed Secured Clams of any Governmental Entities against the Debtor for sales or property taxes that are entitled to automatic first lien priority pursuant to their state laws or are entitled to secured status by virtue of the Collateral that is located in such state.

**3.5** **Class 5: General Unsecured Claims.** This Class consists of Allowed Unsecured Claims which: (i) are not entitled to priority under section 507(a) of the Bankruptcy Code; and (ii) are not Shareholder Unsecured Claims.

**3.6** **Class 6: Shareholder Unsecured Claims.** This Class consists of Allowed Unsecured Claims which: (i) are not entitled to priority under section 507(a) of the Bankruptcy Code; and (ii) are held by holders of Interests in the Debtor.

**3.7** **Class 7: Interests in the Debtor.** This class consists of all Interests in the Debtor.

## ARTICLE IV

## PROVISION FOR SATISFACTION OF CLAIMS AND INTERESTS

The Claims and Interests as classified in Article III hereof shall be satisfied in the manner set forth in this Article IV. The treatment of, and the consideration to be received by, Entities holding Allowed Claims against the Debtor pursuant to this Plan shall be in full satisfaction of their respective Allowed Claims against the Debtor, but shall not affect the liability of any other Entity on such Claim or Interest.

**4.1** **Class 1: Priority Claims.** Claims in Class 1 will be paid 100% of the Allowed Amount of their Claims on the later of 10 days after the Effective Date or 10 days after their Claims are Allowed.

**4.2** **Class 2: Secured Claim of MSB.** The Class 2 Claimant will receive the following treatment: (i) monthly payments will be made at full value through December 2016; (ii) monthly payments will be made at 60% from January 2017 through December 2017; (iii) full payments shall resume in full beginning in January 2018; and (iv) the payments shall be comprised of principal and interest.

**4.3** **Class 3: Secured Claim of SBA.** The Class 3 Claimant will receive the following treatment: (i) monthly payments will be made at full value through December 2016; (ii) monthly payments will be made at 40% from January 2017 through December 2017; (iii) full payments shall resume in full beginning in January 2018; and (iv) the payments shall be comprised of principal and interest.

**4.4** **Class 4: Secured Tax Claims.** Claims in Class 4 will receive the following treatment: (i) interest will be paid from the Petition Date through the Effective Date at the rate of 1% per month; (ii) payments will be made in equal quarterly installments with post- Effective Date interest of 12% per annum, with the last installment to be paid no later than four years after the Petition Date. Holders of Secured Tax Claims shall retain their liens against their Collateral until full payment is made on the entirety of their obligations.

**4.5** **Class 5: General Unsecured Claims**. Claims in Class 5 will receive the following treatment at their election: (i) payment of 35% of the Allowed Amount of their Claims within 10 days of the Effective Date; or (ii) payment in full over five years in 20 equal quarterly installments. The Reorganized Debtor will have the option to immediately pay off Allowed General Unsecured Claims at any time should sufficient liquidity exist. No interest will be paid on General Unsecured Claims.

**4.6** **Class 6: Shareholder Unsecured Claims**. Allowed Claims in Class 6 shall be

**CHAPTER 11 PLAN OF REORGANIZATION OF NOVA DIRECTIONAL, INC. – Page 10**

granted promissory notes payable at the interest rate called for in the notes.  Holders of Allowed Shareholder Unsecured Claims will not be paid any cash or interest prior to satisfaction in full of all Allowed General Unsecured Claims, and shall only receive payment on such Allowed Shareholder Claims if full monthly payments to the Allowed Secured Claims have resumed.

**4.7**     **Class 7: Interest Holders**.  Holders of Interests in the Debtor shall receive equivalent interests in the Reorganized Debtor, subject to the satisfaction of all obligations to pay all Allowed Claims as set forth in the Disclosure Statement and the Plan.  Holders of Interests in the Debtor shall receive no dividends or tax remittances until all Allowed Claims are paid in full.

# ARTICLE V

## DESIGNATION OF THE CLASSES OF CLAIMS IMPAIRED UNDER THIS PLAN

**5.01**     **Impairment**.

| Class | Claim or Interest | Status | Voting Rights |
|---|---|---|---|
| 1 | Priority Claims | Unimpaired | Presumed to Accept |
| 2 | Secured Claim of MSB | Impaired | Entitled to Vote |
| 3 | Secured Claim of SBA | Impaired | Entitled to Vote |
| 4 | Secured Tax Claims | Impaired | Entitled to Vote |
| 5 | General Unsecured Claims | Impaired | Entitled to Vote |
| 6 | Shareholder Unsecured Claims | Impaired | Entitled to Vote |
| 7 | Interest Holders | Impaired | Entitled to Vote |

# ARTICLE VI

## MEANS FOR IMPLEMENTATION OF PLAN

**6.1**     **Post-Confirmation Management.**  The Reorganized Debtor will continue to operate as a going concern after Confirmation. Shareholders currently employed in management positions will be given appropriate salaries in order to maintain the Reorganized Debtor's continued operations.  Specifically, each shareholder shall be given the following position and salary:

| NAME OF SHAREHOLDER | POSITION | SALARY |
|---|---|---|
| Puente | Operations Well Planning Mgr | $ 6,000/mo |
| Chiaramonte | President | $ 9,900/mo |
| Harper | VP Operations | $ 9,900/mo |
| May | Sr Accounting Mgr | $ 4,204/mo |

**6.2**     **Ongoing Operations.** The Debtor's (i) obligations under the Pl will be satisfied out of the cash flow generated by the ongoing operations of its business; in the event that the reorganization contemplated by the Plan is unsuccessful, via a liquidation of the Debtor's assets.

## ARTICLE VII

## PROVISIONS REGARDING DISTRIBUTIONS AND OBJECTIONS TO CLAIMS

**7.01    No Distribution Pending Allowance or Estimation of Claims.** No payments or distributions shall be made with respect to all or any portion of a Contested Claim unless and until such Claim becomes an Allowed Claim or Allowed Interest, as determined by Final Order. No holder of a Claim shall be entitled to any payment under the Plan if such holder has retained property of the Estate.

## ARTICLE VIII

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**8.1    Assumption of Certain Executory Contracts.** All Executory Contracts which have been previously assumed or are on the list of assumed contracts shall be filed by the Debtor with the Court 10 days prior to the hearing on the Confirmation of the Plan.

**8.2    General Rejection of Executory Contracts.** All Executory Contracts which have not been previously assumed or are not on the list of assumed contracts filed by the Debtor with the Court 10 days prior to the hearing on the Confirmation of the Plan are rejected.

**8.3    Cure of Defaults.** Debtor shall cure all defaults existing under any assumed Executory Contract pursuant to the provisions of sections 1123(a)(5)(G) and 365(b) of the Bankruptcy Code by paying the amount, if any, determined by the Court required to be paid in order to assume such Executory Contract. Payment of such amounts shall be made by the Reorganized Debtor as soon as possible after the Effective Date.

**8.4    Claims for Damages.** Each person who is a party to an Executory Contract rejected pursuant to this Article shall be entitled to file, not later than 60 days after the Confirmation Date, which is the deemed date of such rejection, a proof of claim for damages alleged to arise from the rejection of the Executory Contract to which such person is a party. The Court shall determine any such objections, unless they are otherwise resolved. All Allowed Claims for rejection damages shall be treated as General Unsecured Claims.

## ARTICLE IX

## PROVISIONS FOR THE DISCHARGE, SETTLEMENT,
## AND ADJUSTMENT OF CLAIMS

**9.1    Reservation of Claims and Causes of Action.** Any and all claims, causes of action, cross claims or counterclaims held or assertable by the Debtor or the Reorganized Debtor, including but not limited to: (i) the FLSA Contested Matter; (ii) the New Tech Contested Matter; (iii) the Shorter Litigation; and (iv) any and all claims, causes of action, counterclaims, demands, controversies, against third parties on account of costs, debts, sums of money, accounts, reckonings, bonds, bills, damages, obligations, liabilities, objections, and executions of any nature, type, or description which the Debtor or Reorganized Debtor has or may come to have, including, but not limited to, negligence, gross negligence, usury, fraud, deceit, misrepresentation, conspiracy, unconscionability, duress, economic duress, defamation, control, interference with contractual and business relationships, conflicts of interest, misuse of insider information, concealment, disclosure, secrecy, misuse of collateral, wrongful release of collateral, failure to inspect, environmental due diligence, negligent loan processing and administration, wrongful

setoff, violations of statutes and regulations of governmental entities, instrumentalities and agencies (both civil and criminal), racketeering activities, securities and antitrust violations, tying arrangements, deceptive trade practices, breach or abuse of fiduciary duty, breach of any alleged special relationship, course of conduct or dealing, obligation of fair dealing, obligation of good faith, whether or not in connection with or related to this Plan, at law or in equity, in contract or in tort, or otherwise, known or unknown, suspected or unsuspected; (iv) any claim or cause of action under a policy of liability insurance or otherwise; and (v) the Avoidance Actions (to the extent any exist), are hereby preserved and retained for enforcement by the Debtor as of the Confirmation Date. It is the intent of the Debtor that this reservation of claims shall be as broad as permitted by applicable law and shall include all claims, whether or not disclosed in the Debtor's schedules, and shall include any claims referenced in any disclosure statement filed in this case.

   **9.2**   **Sole Right to Pursue Causes of Action**. The Debtor or Reorganized Debtor will possess the sole right to pursue all causes of action, including but not limited to the FLSA Contested Matter, the New Tech Contested Matter, the Shorter Litigation, and (while the Debtor is unaware of the existence of any Avoidance Actions) the Avoidance Actions, on behalf of the Estates. Unless the Debtor or Reorganized Debtor consents, or unless otherwise ordered by the Bankruptcy Court, no other party shall have the right or obligation to pursue any such actions.

   **9.3**   **Return of Fraudulent Transfers**. Any creditor determined to have received a transfer that is voidable pursuant to section 544, 547, 548, 549, and/or 550 of the Bankruptcy Code (to the extent such transfers exist) or any other applicable law shall be required to remit to the Debtor or Reorganized Debtor the determined amount of the avoided transfer prior to receiving any distribution.

## ARTICLE X

## EFFECT OF CONFIRMATION, DISCHARGE, RELEASES, AND INJUNCTION

   **10.1**   **Vesting of Property**. All property of the Estates shall vest in the Reorganized Debtor.

   **10.2**   **Property Free and Clear**. Except as otherwise provided in the Plan, all property dealt with by the Plan shall be free and clear of all claims, liens, and interests of any party as of the Confirmation of the Plan. This Plan will evidence the release of any and all Liens or encumbrances against all property dealt with by the Plan, unless such Lien or encumbrance is specifically retained in the Plan.

   **10.3**   **Legal Binding Effect; Discharge of Claims and Interests**. The provisions of this Plan shall: (i) bind all holders of Claims and Interests, whether or not they accept this Plan; and (ii) except with respect to Allowed Claims, discharge the Debtor, along with the Debtor's past and present officers, directors, agents, servants, representatives and counsel, in their capacity as such, from all Claims, claims, debts, and liabilities, including without limitation, any Claims, claims, debts, and liabilities of a kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, that arose, or has been asserted against, the Debtor or its past and present officers, directors, agents, servants, representatives and counsel, in their capacity as such, at any time before the entry of the Confirmation Order or that arises from any pre-Confirmation conduct of the Debtor or its past and present officers, directors, agents, servants, representatives and counsel, in their capacity as such, whether or not the Claims, claims, debts, and liabilities are known or knowable by the Claimant or Interest holder. This discharge with respect to Allowed Claims shall be in accordance with section 1141(d)(5) of the Bankruptcy Code.

**10.4** **No Release of Guarantors/Plan Exclusive Remedy.** Notwithstanding anything contained herein to the contrary, no third-party guarantors (including any guarantors on the Class 2 secured claims of MSB and Class 3 secured claims of the SBA) shall be discharged and released from any guaranty liabilities under this Plan; provided, however, that absent further order of the Court upon notice and a hearing, the Plan shall be the exclusive remedy as to any collector on a guaranty so long as the Plan shall not be in default. To the extent necessary, any applicable statute of limitations against collection from the guarantors is specifically tolled from the period of time from the Petition Date until the date upon which the Reorganized Debtor fails to cure any written notice of default as set forth in the Plan.

**10.5** **Satisfaction of Claims and Interests.** Except as otherwise provided by the Plan, the consideration distributed under the Plan shall be in complete satisfaction of all Claims of any Creditor, including Claims arising prior to the Effective Date.

**10.6** **Permanent Injunction.** Except as otherwise expressly provided in, or permitted under, this Plan, the Confirmation Order shall provide, among other things, that all Creditors and persons who have held, hold, or may hold Claims or Interests against the Debtor or its past and present officers, directors, agents, servants, representatives and counsel, in their capacity as such, are permanently enjoined on and after the Effective Date as long as the Plan is not in default against the: (i) commencement or continuation of any judicial, administrative, or other action or proceeding against the Debtor or its past and present officers, directors, agents, servants, representatives and counsel, in their capacity as such, on account of Claims against the Debtor or its past and present officers, directors, agents, servants, representatives and counsel, in their capacity as such; (ii) enforcement, attachment, collection, or recovery by any manner or means of any judgment, award, decree, or order against the Debtor (along with its past and present officers, directors, agents, servants, representatives and counsel, in their capacity as such) or any assets or property of same; or (iii) creation, perfection, or enforcement of any encumbrance of any kind against the Debtor (along with its past and present officers, directors, agents, servants, representatives and counsel, in their capacity as such) arising from a Claim.

## ARTICLE XI

## MISCELLANEOUS PROVISIONS

**11.1** **Request for Relief Under Section 1129(b).** In the event any Impaired Class of Claims or Interests shall fail to accept this Plan in accordance with section 1129(a) of the Bankruptcy Code, the Debtor requests that the Bankruptcy Court confirm this Plan in accordance with the provisions of section 1129(b) of the Bankruptcy Code.

**11.2** **Headings.** All headings utilized in this Plan are for convenience and reference only, and shall not constitute a part of this Plan for any other purpose.

**11.3** **Due Authorization.** Each and every Claimant who elects to participate in the distributions provided for herein warrants that such Claimant is authorized to accept, in consideration of such Claim against the Debtor, the distributions provided for in this Plan and that there are not outstanding commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights conveyed or obligations undertaken by such Claimant under this Plan.

**11.4** **Further Assurances and Authorizations.** The Debtor or Reorganized Debtor shall seek such orders, judgments, injunctions, and rulings that may be required to carry out further the intentions and purposes, and to give full effect to the provisions of, this Plan.

**11.5** **Applicable Law.** Except to the extent that the Bankruptcy Code or other federal law is applicable, the rights, duties, and obligations arising under this Plan shall be governed by and construed and enforced in accordance with the internal laws of the State of Texas without reference to the laws of other jurisdictions.

**11.6** **No Interest.** Except as expressly stated in this Plan, or allowed by the Court, no interest, penalty, or late charge is to be Allowed on any Claim subsequent to the Petition Date.

**11.7** **Post-Confirmation Actions.** After Confirmation, the Debtor or Reorganized Debtor may, with the approval of the Court, and so long as it does not materially or adversely affect the interests of the Creditors, remedy any defect or omission, or reconcile any inconsistencies in the Plan or in the Confirmation Order, in such manner as may be necessary to carry out the purposes and effect of the Plan.

**11.8** **Notices of Default.** Notwithstanding anything contained herein to the contrary, no Claimant shall have the right to exercise any rights under the Plan until the Debtor or Reorganized Debtor fails to cure any default within 30 days of receipt of written notice of such default to the Debtor and Reorganized Debtor.

**11.9** **Notices.** All notices, requests, elections, or demands in connection with the Plan shall be in writing and shall be deemed to have been given when received or, if mailed, 5 days after the date of mailing provided such writing shall have been sent by registered or certified mail, postage prepaid, return receipt requested.

**11.10** **Payment Dates.** Whenever any payment or distribution to be made under the Plan shall be due on a day other than a Business Day, such payment or distribution shall instead be made, without interest, on the next Business Day, except as may be provided in negotiable instruments requiring such payments.

## ARTICLE XIII

## RETENTION OF JURISDICTION

The Bankruptcy Court shall retain exclusive jurisdiction over this Chapter 11 Case after Confirmation for the following purposes:

**(a)** to consider and effect any modification of this Plan under section 1127 of the Bankruptcy Code;

**(b)** to hear and determine all controversies, suits and disputes that arise in connection with the interpretation, implementation, effectuation, consummation or enforcement of this Plan;

**(c)** to hear and determine all requests for compensation and/or reimbursement of expenses for the period commencing on the Petition Date through the Confirmation Date;

**(d)**   to hear and determine all objections to Claims and Interests, and to determine the appropriate classification of any Claim or Interest, and other controversies, suits and disputes that may be pending at or initiated after the Confirmation Date, except as provided in the Confirmation Order;

**(e)**   to hear and determine all causes of action, including the FLSA Contested Matter, the Shorter Litigation, the New Tech Contested Matter, and the Avoidance Actions;

**(f)**   to consider and act on such other matters consistent with this Plan as may be provided in the Confirmation Order;

**(g)**   to make such orders as are necessary and appropriate to carry out and implement the provisions of this Plan; including to effect the further assurances provided in this Plan;

**(h)**   to approve the reasonableness of any payments made or to be made, within the meaning of section 1129(a)(4) of the Bankruptcy Code;

**(i)**   to exercise the jurisdiction granted pursuant to section 505(a) and (b) of the Bankruptcy Code to determine any and all federal, state, Commonwealth, local and foreign tax liabilities of, and any and all refunds of such taxes paid by the Debtor;

**(j)**   to hear and determine any issues or matters in connection with any property not timely claimed as provided in this Plan; and

**(k)**   to determine any and all motions, applications, adversary proceedings and contested matters whether pending in the Case as of the Effective Date or brought subsequently by the Debtor or Reorganized Debtor.

Nothing contained in this Article shall be construed so as to limit the rights of the Debtor or Reorganized Debtor to commence or prosecute any claim in any court of competent jurisdiction.

**DATED**: November 4, 2016

**DEBTOR:**

**NOVA DIRECTIONAL, INC.**

By: */s/Edward Chiaramonte*
     Edward Chiaramonte, President

**KILMER CROSBY & WALKER PLLC**

By: */s/ Brian A. Kilmer*
Brian A. Kilmer
Texas Bar No.: 24012963
Email:  bkilmer@kcw-lawfirm.com
J. Meritt Crosby
Texas Bar No.: 24050462
Email:  mcrosby@kcw-lawfirm.com
Shannon A.S. Quadros
Texas Bar No.:24072766
Email: squadros@kcw-lawfirm.com
5100 Westheimer, 2nd Floor,
Houston, Texas 77056
Telephone: 713.588.4344
Facsimile:  214.763.6801

**COUNSEL FOR THE DEBTOR**